Robert S. BEINEKE and Joan
S. Beineke, Appellants–
Plaintiffs,

v.

CHEMICAL WASTE MANAGEMENT
OF INDIANA, LLC, Appellee–
Defendant.

No. 02A04–0611–CV–665.

Court of Appeals of Indiana.

June 15, 2007.

Jeffrey P. Smith, W. Randall Kammeyer, Sarah L. Blake, Hawk Haynie Kammeyer & Chickedantz, LLP, Fort Wayne, IN, Attorneys for Appellants.

Robert W. Eherenman, Mark E. Giaquinta, Haller & Colvin, P.C., Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Robert and Joan Beineke appeal the trial court's grant of summary judgment in favor of Chemical Waste Management of Indiana, LLC ("Chemical Waste"). We affirm.

### Issue

The restated, dispositive issue we address is whether the Beinekes' complaint against Chemical Waste is barred by the applicable statute of limitations.

### Facts

In July 1974, Amon Brooks filed a request for an improvement location permit ("ILP") with the Allen County Plan Commission ("ACPC") in order to construct a landfill. The ACPC refused to issue the ILP. Brooks appealed this decision to the Allen County Board of Zoning Appeals ("ACBZA"). After a hearing before the ACBZA, Brooks submitted a list of "RECOMMENDED RESTRICTIONS AND REQUIREMENTS" for the proposed landfill, labeled as Exhibit E.App. p. 337. Included in this list, among numerous other requirements, was a requirement that the landfill "be entirely fenced in" such that "[n]o portion of the Landfill operation will be visible from the ground level of any existing residence." *Id.* at 338. On September 18, 1974, the ACBZA reversed the ACPC's denial of Brooks's ILP request. As part of its order, the ACBZA stated:

> That inasmuch as [Brooks] has agreed that the following restrictions (Exhibit E) should be adhered to, said restrictions should be included in a deed as covenants running with the land as long as said property is to be used for a sanitary landfill. These covenants should be enforced by the Allen County Zoning Administrator or any successor agency having jurisdiction over the sanitary landfill.

*Id.* at 336. The ACBZA's order was recorded in the Allen County Recorder's office in 1975.

Chemical Waste later took over operation of the landfill.[1] In 1981, the Beinekes

---

1. There have been various iterations of the landfill operator over the years; for the sake

purchased a home in close proximity to the landfill. They assert that beginning in 1985 or 1986, they were able to see some of the landfill operations from the first floor of their residence, in violation of the fencing "covenant" that no portion of the landfill be visible from the first floor of any residence.

In 1993, the City of New Haven sued Chemical Waste, alleging that it had improperly expanded the use of the landfill. On June 4, 1993, the Beinekes and other nearby landowners intervened in the New Haven lawsuit. Their complaint also alleged that Chemical Waste had improperly expanded the use of the landfill, specifically that Chemical Waste was beginning to include hazardous waste in the landfill. The original complaints in the 1993 lawsuit by New Haven and the Beinekes made no mention of Chemical Waste allegedly having violated the 1974 "covenants" with respect to fencing. The 1993 lawsuit also named the ACBZA as a defendant; Chemical Waste in turn filed cross- or counterclaims against the Allen County Zoning Administrator ("Zoning Administrator") and the ACBZA. The Zoning Administrator, in a cross- or countercomplaint against Chemical Waste, apparently did question whether Chemical Waste was violating the 1974 visibility/fencing "covenant."

In 1994, the Allen County Superior Court entered an order on cross-motions for summary judgment filed by the parties. At the outset, the court stated that the Beinekes' complaint "presents claims essentially coterminous with those of New Haven. . . ." *Id.* at 224. Thus, it treated New Haven and the Beinekes as one party presenting one set of claims, regarding the allegedly illegal expansion of the landfill, and the Zoning Administrator as a separate party presenting separate claims, including alleged violations of the 1974 "cov-

enants." The trial court granted partial summary judgment in favor of Chemical Waste and against New Haven, the Beinekes, and the Zoning Administrator. With specific respect to the Administrator's claims regarding alleged violations of the 1974 "covenants," the trial court denied Chemical Waste's summary judgment motion and stated:

> The issues surrounding [Chemical Waste's] compliance with the Covenants on the original site are not properly before this Court unless Allen County zoning authorities find [Chemical Waste] to be out of compliance . . . with the further site-specific conditions set forth in the Covenants, and until [Chemical Waste] exhausts its administrative remedies in the appeal process under the [Allen County Zoning Ordinance].

*Id.* at 238. The trial court, therefore, stayed any further proceedings "pending [Chemical Waste's] exhaustion of administrative remedies before any administrative agencies having primary jurisdiction over [Chemical Waste's] land use." *Id.* at 240. No party attempted to appeal this order.

In 1995, two more lawsuits were filed concerning the landfill, after the Zoning Administrator issued various stop work orders to Chemical Waste and the ACBZA issued rulings on those orders. One of these orders alleged that Chemical Waste was violating the 1974 fencing/visibility requirement. The issues presented in both of these 1995 lawsuits overlapped significantly, although Chemical Waste was the petitioner seeking judicial relief in one of the cases and the ACBZA and Zoning Administrator, as well as New Haven, were petitioners in another. The Beinekes did not intervene in these lawsuits. On February 6, 1996, the trial court affirmed the validity of the stop work order that

of simplicity we refer to these entities collec- tively as Chemical Waste.

alleged violation of the visibility/fencing requirements from the 1974 "covenants." The trial court also allowed some of the ACBZA's other rulings to stand while reversing others.

Shortly thereafter, Chemical Waste, the ACBZA, and the Zoning Administrator settled all of their outstanding claims. New Haven was not a party to this settlement. It filed a separate lawsuit, joined this time by the Beinekes and other landowners, challenging the settlement and seeking to preclude entry of an agreed judgment, as reached by Chemical Waste, the ACBZA, and the Zoning Administrator. The trial court dismissed this separate action and approved and entered the agreed judgment. We affirmed the entry of the agreed judgment and the dismissal of New Haven and the Beinekes' challenge to it. *City of New Haven v. Allen County Bd. of Zoning Appeals,* 694 N.E.2d 306 (Ind.Ct.App.1998), *trans. denied.* In separate opinions, we also concluded that the agreed judgment did not moot consideration of New Haven's appeal from the trial court's rulings but affirmed the merits of those rulings. *City of New Haven v. Chemical Waste Mgmt. of Indiana, L.L.C.,* 685 N.E.2d 97 (Ind.Ct.App.1997), *trans. dismissed; City of New Haven v. Chemical Waste Mgmt. of Indiana, L.L.C.,* 701 N.E.2d 912 (Ind.Ct.App.1998), *trans. denied.*

In 1998, Chemical Waste ceased active operation of the landfill. The Beinekes, however, still claim that they can see mounds from the landfill from the first floor of their residence, in violation of the 1974 "covenants." In 2002, the City of Fort Wayne Board of Zoning Appeals ("FWBZA"), which had succeeded the ACBZA after Fort Wayne annexed land including the landfill, repealed the 1974 "covenants." Shortly thereafter, New Haven settled all of its still outstanding

claims against Chemical Waste. On June 5, 2003, the Beinekes attempted to file an amendment to their 1993 complaint, for the first time specifically alleging that Chemical Waste had violated the 1974 "covenants" in operating the landfill. The trial court denied permission to file an amended complaint.

On December 8, 2004, the Beinekes filed a new cause of action against Chemical Waste. This complaint alleged that Chemical Waste had breached the 1974 "covenants" and sought "specific enforcement of the covenants as well as any other consequential damages flowing from the Defendant's breach of the covenants." App. p. 15. The Beinekes and Chemical Waste filed cross-motions for summary judgment. Chemical Waste asserted that the Beinekes' complaint was barred by applicable statutes of limitation and by laches. On October 16, 2006, the trial court granted summary judgment in favor of Chemical Waste. The Beinekes now appeal.

### Analysis

When reviewing a summary judgment ruling, we apply the same standard as the trial court. *Auto–Owners Ins. Co. v. Harvey,* 842 N.E.2d 1279, 1282 (Ind.2006). Summary judgment shall be entered "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Ind. Trial Rule 56(C)). During our review, all facts and reasonable inferences drawn from them are construed in favor of the nonmoving party. *Id.* We will affirm a grant of summary judgment if it can be sustained on any theory or basis in the record. *Payton v. Hadley,* 819 N.E.2d 432, 438 (Ind.Ct.App.2004). Our standard of review is not altered by the fact that there were cross-motions for summary judgment. *See Kroger Co. v.*

*Estate of Hinders*, 773 N.E.2d 303, 305 (Ind.Ct.App.2002), *trans. denied.*

■ This case revolves entirely upon resolution of which statute of limitations applies in this case. "The applicable statute of limitations is determined by identifying the nature or substance of the cause of action." *Crossroads Serv. Ctr., Inc. v. Coley*, 842 N.E.2d 822, 824 (Ind.Ct.App. 2005), *trans. denied.* Chemical Waste argues that either one of two statutes applies in this case: Indiana Code Section 34–28–5–1(c)(2), which provides a two-year limitations period to bring an action based upon an alleged violation of an ordinance, or Indiana Code Section 34–11–1–2(a), which provides a "catch-all" ten-year limitations period for actions arising after September 1, 1982, that are not governed by any other statute of limitations. The Beinekes do not make any argument that they filed suit within either a two-year statute of limitations or ten-year statute of limitations. They focus exclusively on the twenty-year statute of limitations governing claims based on written contracts entered into before September 1, 1982, as provided by Indiana Code Section 34–11–2–11.

■ The Beinekes argue that the twenty-year period applies because the 1974 "covenants" actually constituted a restrictive covenant contract that Brooks entered into, and that they are third-party beneficiaries of that contract. We note, "A restrictive covenant is an agreement between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner." *Johnson v. Dawson*, 856 N.E.2d 769, 772 (Ind. Ct.App.2006). Restrictive covenants have also been described as " 'restrictions arising out of agreements between private parties who, in the exercise of their constitutional right of freedom of contract, can impose whatever lawful restrictions upon the use of their lands that they deem

advantageous or desirable.' " *Ogden v. Premier Properties, USA, Inc.*, 755 N.E.2d 661, 667 (Ind.Ct.App.2001) (quoting 5 Edward H. Ziegler, Jr., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 57.02 at 57–3 (2001)). This is in contrast to restrictions on land use imposed by a governmental zoning body, which are " 'imposed by the municipality for the public welfare....' " *Id.*

The Beinekes never identify who the other party to this alleged "contract" with Brooks is. The only possible party, it would appear to us, would have been the ACBZA. But as noted, restrictive covenants are defined as contracts between *private* parties, and then usually between a grantor and grantee of real property. The Beinekes do not identify any private party that was a first party to any alleged contract with Brooks. The document Brooks submitted to the ACBZA entitled "RECOMMENDED RESTRICTIONS AND REQUIREMENTS" for the proposed landfill failed to identify any particular landowners or persons in whose favor those restrictions were intended to run or who was entitled to enforce them. App. p. 337. Cf. *Ogden*, 755 N.E.2d at 665 (noting that "covenants" filed by proposed land developer in that case expressly stated that they ran in favor of all owners of real estate within a one-mile radius of the subject property). Furthermore, purported "contracts" between a private party and a zoning body are disfavored and possibly even illegal. *See Ogden*, 755 N.E.2d at 668. It is difficult to conceive how the 1974 restrictions constituted a contractual restrictive covenant if there is no other identifiable party to it aside from Brooks.

■ Rather than being a contract, it appears to us that the document filed by Brooks and incorporated by the ACBZA as part of its issuance of an ILP for the landfill was more akin to a zoning "com-

mitment" or "condition."[2] In zoning terminology, "if a legislative body imposes the restriction, it is a condition, but if it is submitted by the property owner to induce rezoning, it is a commitment." *Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n,* 819 N.E.2d 55, 62 (Ind. 2004). In other words, directives from a zoning agency as part of a zoning request are "conditions," and agreements by a landowner to adhere to certain restrictions are "commitments." Additionally, what label a zoning body decides to place on a land use restriction is not dispositive as to the legal character of the restriction. *See id.* at 63. Thus, the fact that the ACBZA labeled the land use restrictions here "covenants" does not mean they necessarily were restrictive covenants in the legal sense of the term. *See id.* (discussing whether land use restrictions, which the zoning agency had alternatively labeled "conditions" and "covenants," were "commitments" or "conditions").

■ The list of "RECOMMENDED RESTRICTIONS AND REQUIREMENTS" that Brooks filed clearly appears to have been a "commitment" intended to induce the ACBZA to rule in his favor and issue an ILP for construction of a landfill. App. p. 337. If this case concerned a conditional use permit, such "commitments" would have to have been recorded. *See Story,* 819 N.E.2d at 62 (citing Ind. Code § 36–7–4–921).[3] This case technical-

ly concerned an ILP, not a conditional use permit or a rezoning request, but the "commitments" were recorded nevertheless. Additionally, the ACBZA's 1974 order gave the Zoning Administrator authority to enforce the land use restrictions; private restrictive covenants, on the other hand, only are enforceable by the private parties to the covenants. *See Ogden,* 755 N.E.2d at 667 ("a covenant does not become law and is only enforceable by the designated beneficiaries of the restrictions"). In sum, it is clear to us that the 1974 list of "covenants" did not constitute a contractual restrictive covenant between private parties, but was a "commitment" agreed upon by Rogers and the ACBZA with primary enforcement authority given to the Zoning Administrator. As such, we conclude that the statute of limitations governing contracts, found in Indiana Code Section 34–11–2–11, does not apply in this case.[4]

■ Assuming the Beinekes had concurrent authority with the Zoning Administrator to bring an action to enforce the 1974 "covenants" or to seek damages under them, they had at most ten years from the accrual of a cause of action against Chemical Waste to file suit pursuant to the "catch-all" statute of limitations in Indiana Code Section 34–11–1–2.[5] The Beinekes make no argument that they filed suit within such a time frame. "The claimant bears the burden of bringing suit

2. We also note that the "covenants" in the *Ogden* case relied upon by the Beinekes apparently were not incorporated within the zoning agency's order approving a rezoning petition, unlike the "covenants" in this case. *See Ogden,* 755 N.E.2d at 665 (noting that the order incorporated earlier-approved use and development commitments but not stating that they included subsequent "covenants").

3. Generally, zoning "conditions" do not have to be recorded in order to be effective against subsequent purchasers of the property. *See Story,* 819 N.E.2d at 64.

4. This conclusion that the 1974 "covenants" did not constitute a contract also means we need not address the Beinekes' assertion that the FWBZA could not repeal those covenants in 2002 without their consent.

5. It is questionable whether the Beinekes' suit would fall under the two-year statute of limitations to bring an action *enforcing an ordinance* because such an action must be brought in the name of the applicable municipality. *See* I.C. § 34–28–5–1(b).

**540**

against the proper party within the statute of limitations." *Crossroads*, 842 N.E.2d at 825. When a party moving for summary judgment asserts the statute of limitations as an affirmative defense and establishes that the action was commenced outside of the statutory period, the burden shifts to the nonmoving party to establish an issue of fact material to a theory that avoids the affirmative defense. *Garneau v. Bush*, 838 N.E.2d 1134, 1140 (Ind.Ct.App.2005), *trans. denied.* As Chemical Waste points out, the Beinekes were aware beginning in the mid–1980s that they could see parts of the landfill from the first floor of their residence, and they clearly were aware of the 1974 "covenants" no later than the date of their 1993 complaint, to which the "covenants" were attached. Again, however, that complaint made no allegation that Chemical Waste was violating those "covenants" and it alleged solely that Chemical Waste was improperly expanding the use of the landfill. The Beinekes did not file the current lawsuit until December 2004, or eleven years after the 1993 complaint. Chemical Waste has established that this lawsuit was filed past the applicable statute of limitations and the Beinekes have presented no evidence or argument that would avoid the statute. Therefore, Chemical Waste was entitled to judgment as a matter of law.

### Conclusion

The trial court properly granted summary judgment in favor of Chemical Waste because the undisputed evidence reveals that the Beinekes' lawsuit was filed beyond the applicable statute of limitations. We affirm.

Affirmed.

NAJAM, J., and RILEY, J., concur.